THE CHICAGO JUNCTION RAILWAY COMPANY
*v.*
ANNIE McGRATH *et al.*

*Opinion filed June 16, 1903—Rehearing denied October 7, 1903.*

1. RAILROADS—*when question of negligence is for the jury.* Whether a railroad company was guilty of negligence in making a "flying switch" is properly left to the jury, under evidence that two loaded cars were kicked back against several cars standing so as to just cover a much traveled public street, with such force as to drive the standing cars twenty or twenty-five feet.

2. NEW TRIAL—*what not ground for new trial.* That a witness for plaintiff, as he was leaving the court room, the judge and counsel having temporarily left the room, said to the jury that he hoped they would do the square thing by the widow and give her a substantial verdict, is not ground for a new trial, where defendant's special officer saw what was taking place but made no effort to ascertain what was said until after a verdict was returned, and it does not appear the jury were influenced by such remark.

*Chicago Junction Railway Co.* v. *McGrath,* 107 Ill. App. 100, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county in favor of appellees, and against appellant, for $5000.

The action is trespass on the case. The declaration consists of eight counts, each of which contains the general allegation that on the 14th day of November, 1898, appellant possessed and was using various railway tracks in the city of Chicago, extending along and upon Fortieth street, in said city, and various tracks which extended from its main line through the yards of the Weaver Coal Company, and that appellant was operating, by its servants, a certain locomotive engine and was switching cars along and upon the tracks in said coal yard. In ad-

dition to these general allegations the first count charged that William McGrath was in the employ of said Weaver Coal Company; that the employees of the said coal company, in the course of their employment, frequently, regularly and habitually crossed and re-crossed the switch tracks in said coal yard, and that this fact was known to appellant; that it thereupon became and was the duty of appellant to use reasonable care in the operation of its engine and cars, but that while the said McGrath, in the exercise of due care, was rightfully crossing one of said tracks, appellant wrongfully, negligently and recklessly pushed certain cars upon the track over which he was crossing, whereby he was run over and killed. The first count concludes, as do all the other counts, with an enumeration of the heirs of William McGrath and a recital of the issuing of letters of administration to appellees. The remaining counts allege substantially the same facts, charging different violations of duty. The second count alleges that appellant wrongfully, negligently, willfully, wantonly and recklessly pushed the said car, etc. The third count charges that appellant wrongfully and negligently failed to give any warning or notice of the movement of said cars. The fourth count alleges the duty of appellant, in switching cars, to have a brakeman or other person upon or near the forward end of the forward car to regulate the speed thereof and to warn persons crossing said tracks, and charges negligent and careless violation of this duty. The fifth count charges that appellant carelessly, wrongfully and negligently moved the said cars at a high and excessive and dangerous rate of speed. The sixth count sets forth an ordinance of the city of Chicago requiring the bell of each locomotive, while running within said city, to be rung continually in certain portions of said city, and alleges that while operating a locomotive in a portion of the city included in said ordinance appellant negligently violated the same. The seventh count sets up an ordinance of

the city of Chicago limiting the speed of freight cars within the corporate limits of the said city to six miles per hour, and charges a violation of said ordinance. The eighth count sets forth the statute of the State of Illinois requiring each railroad corporation to station upon the rear or hindmost car of each train a trusty and skillful brakeman, unless the brakes are efficiently operated by power applied from the locomotive, and charges a violation of said statute. To this declaration appellant filed the general issue.

From the evidence it appears that the Weaver Coal Company owned a coal yard extending along the south line of Fortieth street from Wentworth avenue on the east to Hopkins street on the west,—a distance of two blocks,—in the city of Chicago; that said yards were divided by Atlantic street, which runs parallel with the two last named streets; that appellant's main line runs on Fortieth street, and in addition thereto it has a switch leading off from its main line into said coal company's yard, and maintains therein several other switches used for the purpose of delivering cars and freight to the coal company. William McGrath, appellees' intestate, was a teamster in the employ of the coal company. A short time prior to the injury which caused his death he returned from delivering a load of coal and went to his foreman for further instructions. The evidence tends to show that while he was present and within hearing, the conductor of the switch train whose engine caused the injury held a conversation with said foreman relative to placing certain cars upon the switches within said yards. The foreman at that time instructed McGrath to feed his horses. This necessitated crossing the tracks of appellant in order to reach the barn of the coal company, its custom being to feed at noon in the harness, from nose bags. McGrath started for the barn and was detained at the crossing on Atlantic street by the train which caused the accident. There is evidence in the record

tending to show that he was then warned by a switch-man of appellant that they were about to do some switch-ing and to look out for himself. He went to the barn, got three nose bags filled with feed, and started back to the place where he had left his team. Atlantic street was again blocked by three detached cars standing on one of the switches, the locomotive being some distance away on another track. McGrath turned off on a path, passed along the side of the north car the distance it pro-jected over the street, turned to go around it, and was then knocked down by reason of two loaded cars which had been kicked in on this switch from another track striking the opposite end of the cars around the north end of which he was passing, with sufficient force to drive them forward twenty to twenty-five feet. The injuries received caused his death shortly thereafter.

WINSTON, BABCOCK, STRAWN & SHAW, for appellant.

FRANCIS T. MURPHY, (EDWARD C. HIGGINS, of coun-sel,) for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

Appellant insists that this case should be reversed, because, *first*, it was not guilty of negligence which in any manner contributed to the injury to the deceased; *second*, the deceased was guilty of contributory negli-gence at the time of the accident; and *third*, appellant did not receive the fair trial to which it was entitled un-der the law, by reason of the fact that one McGinnis, a witness for appellees, attempted wrongfully to influence the jury to return a substantial verdict in their behalf.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the appellant made a mo-tion and offered an instruction peremptorily taking the case from the jury, which motion was overruled and in-struction refused by the court. Except for this action

its first and second assignments of error would not be before the court for consideration, as the questions of negligence and contributory negligence are, as a general rule, questions of fact for the jury. The refusal to take the case from the jury, however, requires an examination of the evidence by this court, not for the purpose of determining in whose favor it preponderates, but in order to ascertain whether the evidence can be said to tend to prove the cause of action laid in the declaration. If it does, the court properly submitted the case to the jury.

From a careful examination of this record we are of the opinion that the court properly refused to take the case from the jury. It cannot be said that ordinarily prudent men, under the circumstances disclosed by the evidence in this case, would not be apt to differ in their views as to the negligence of appellant in "kicking" two heavily loaded cars with the force these cars appear to have been driven, against other cars so standing as to barely cover the width of a public street commonly traveled. This manner of switching has been condemned as dangerous by this court, (*Illinois Central Railroad Co.* v. *Baches*, 55 Ill. 379,) and Mr. Thompson, in his work on Negligence, (vol. 2,—2d ed.—sec. 1695,) says: "The courts have held with practical unanimity, and often with great emphasis, that the practice called making the 'running' or 'flying switch,' which consists of 'kicking' or 'shunting' cars forward, in breaking or making up trains, by moving them forward at a rapid speed detached from the engine or from a portion of the train, and then, by checking or increasing the speed of the engine or of such portion of the train, allowing them to fly forward over public crossings without the usual warning signals by bell or whistle, or any means of giving such signals, and without any other signals than may be afforded by a brakeman standing on such 'running' or 'flying cars,' constitutes negligence." There was some conflict in the evidence as to whether the bell upon the locomotive was rung at the time of this

accident, but as the evidence shows that the locomotive was at least one hundred yards distant upon another track, and that there was no brakeman upon either the moving or standing cars, even though the bell was ringing we cannot, as a matter of law, say that appellant, in putting in motion said cars, allowing them to get beyond its control, and by reason thereof causing an accident resulting in death, was not guilty of negligence. Nor can we say McGrath was guilty of negligence contributing to the accident. In *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 Ill. 623, it was said (p. 628): "It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise, and the question what a reasonably prudent person would do for his own safety under like circumstances must be left to the jury as one of fact." And in *Lake Shore and Michigan Southern Railway Co.* v. *Johnsen,* 135 Ill. 641, on page 647 it is said: "Unless the negligence of the plaintiff is proven by such conclusive evidence that there can be no difference of opinion as to its existence upon a mere statement of the facts, the jury must pass upon it. We have repeatedly held that it is a question of fact to be determined by the jury from the evidence, and not a question of law, whether an injured party has exercised ordinary care for his safety and to avoid injury." And in *Chicago and Alton Railroad Co.* v. *Pearson,* 184 Ill. 386, on page 391, that "it is not a rule of law that the omission of the duty to look and listen will bar a recovery where there are facts excusing the performance of that duty, (Elliott on Railroads, sec. 1166,) and it is the settled rule of this court that it cannot be said, as a matter of law, that a person is in fault in failing to look and listen if misled without his fault or where the surroundings may excuse such failure. (*Pennsylvania Co.* v. *Frana,* 112 Ill. 398; *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 id. 132; *Terre Haute and Indianapolis Railroad*

*Co.* v. *Voelker,* id. 540; *Chicago and Northwestern Railway Co.* v. *Hansen,* 166 id. 623.) The jury were to determine, as a question of fact, in view of all the surroundings, whether the deceased was guilty of negligence in failing to look and listen for the other train. Whether these circumstances relieved him from the duty of looking and listening required the submission of the case to the jury."

As to the third objection, it appears that a witness of appellees, one McGinnis, as he was leaving the court room, the judge and counsel having withdrawn to chambers for the purpose of arguing the motion to take the case from the jury, stepped in front of the jury and addressed some remarks to them to the effect that he hoped they would do the square thing by the widow and give her a substantial verdict. Court was in session, and there was a bailiff in the court room in charge of the jury. Appellant had a special officer present, whose business it was to prepare its cases for trial and who saw all that took place, although he swears he heard nothing that was said. This special officer made no complaint to counsel or court, and seems to have made no effort to ascertain what was said to the jury by McGinnis until a verdict was returned against his employer, when, although it was argued he, not being a lawyer, did not realize the effect of what was done in the court room, it appears that he at once investigated the matter, and on ascertaining the facts they were presented to the court and urged as a ground upon which a new trial should be granted. Had the action of McGinnis been presented to the court upon resuming the trial of the case, an instruction could have been given which would have effaced the effect, if any, of this witness' interference. It does not appear that he had any influence with the jury, although it does appear that some of them were much amused at what he had to say, while others resented his interference. He had been a source of much amusement to the court and jury during the trial, and from reading his

testimony it is perfectly apparent, and the jury could not but have been fully aware, that his sympathies were entirely with the widow before he gave expression to them, and it seems to us that his conduct could not but have lessened the effect of his testimony and impaired his credit as a witness. It does not appear that appellees were in any way connected with or to blame for this improper conduct of the witness, and from the affidavit of McGinnis produced by appellant at the time of making the motion for a new trial, it appears that he did not know that he was doing anything improper in addressing the jury. In our opinion it does not appear from this record that the trial court erred in not granting a new trial upon this ground.,

No other error having been assigned or argued, we are of the opinion the judgment of the Appellate Court affirming that of the superior court should be affirmed.

*Judgment affirmed.*