Pittsburg, Cincinnati, Chicago & St. Louis R. R. Co. v. Louise Smith.

1. RAILROADS—*Public Have a Right to Rely upon the Performance of a Flagman's Duty.*—It is the flagman's duty to know of the approach of trains and to give timely warning to all persons attempting to cross the railroad tracks, and the public have a right to rely upon a reasonable performance of that duty.

2. ORDINARY CARE—*A Question for the Jury.*—What a reasonably prudent person would do for his own safety under the circumstances of any particular case is a question of fact for the jury.

3. SPECIAL VERDICTS—*Court May Submit an Instruction to Jury to Find Specially Without Submitting it First to Counsel.*—The court, on its own motion, may require the jury to find specially upon any material question of fact under Section 58a, Chapter 110, R. S., without first submitting its special finding to the parties to the action, or to either of them before presenting the same to the jury.

4. SAME—*Power of Court in Respect of, is the Same as of Written Instructions.*—The power of the court in respect of instructions to the jury to find specially is the same as is its power concerning written instructions.

5. APPELLATE COURT PRACTICE—*Error in Giving Instruction Will Only be Considered Where All Instructions Given Are Set Out in Full.*—Error in giving instructions will be considered upon appeal or writ of error only when all the instructions given are set out in full in the abstract.

6. SAME—*Where an Appellate Court Will Not Substitute its Judgment as to the Amount of Damages for that of the Jury and of the Trial Court.*—An appellate court is very reluctant to substitute its judgment as to the amount of damages for that of the jury and of the trial court. It will not do so unless it is clearly manifest that the jury have abused the discretion vested in them.

7. DAMAGES—*When $2,000 Not Excessive.*—Plaintiff as a result of the injury received two contusions on the head, one of which was merely a scalp wound, and in the other the skull was crushed a little, such condition being liable to cause headaches; a wound in the thigh which

resulted in an abscess which is liable to cause pain and difficulty in walking, because the muscle or tissue is somewhat destroyed; an aneurism just below the right hip joint which would weaken the limb, and had one ear nearly torn off. *Held*, $2,000 not excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed October 26, 1903.

This is an action on the case brought by appellee against appellant and the Chicago Terminal Transfer Railroad Company to recover damages for injuries received by her December 8, 1899, at the intersection of the tracks of appellant and Thirty-fifth street in the city of Chicago. On the trial the court directed a verdict in favor of the terminal company, and submitted the question of the liability of appellant to the jury. The trial resulted in a verdict and judgment for the sum of $2,000 against appellant, from which judgment this appeal is taken.

Thirty-fifth street runs east and west. In the middle of the street lie two street car tracks. Across the street and perpendicular to the line of its direction there are six steam railroad tracks, the two west of which are owned by appellant, over which it runs its trains, using the east track for its north-bound trains and the west track for its south-bound trains. A very few feet west of the west track, and north of the north curb line of the street, is a flagman's shanty. The distance between the nearest rails of appellant's two tracks, as is shown by the plat in evidence, is about ten feet.

The facts of the accident are, that on that day at 2:30 P. M., appellee, who was familiar with this crossing, and two other women, were going west along the south side of Thirty-fifth street. When they reached this crossing a long freight train was going north upon appellant's east track. The women crossed three or four tracks east of the one upon which the freight train was passing, and then stood waiting for it to get by. As soon as the last car of that train had passed the sidewalk upon which they stood,

they started west, appellee being a step behind the other
two women.    Before appellee started, the rear of the train
was about the north line of Thirty-fifth street.    She glanced
north but saw no other train.    She looked for, but did not
see, the flagman, and did not hear any one call to her.    She
then proceeded on.    The freight train, as it went over the
crossing of the street car tracks, made so much noise that it
deadened all other sounds, so that no one of the women
heard• the whistle or the bell of the south-bound train.
The two women who preceded her crossed in safety, but
appellee was struck and injured by the south-bound train,
which she did not see.    Neither of the other two women
saw the flagman.    Mrs. Hines, when she reached the
middle of the west track, saw the south-bound train for the
first time, and jumped out of its way.    At the same time
she saw the flagman standing just west of the track, a little
south of his shanty.    No one of the women looked. north
along the tracks, excepting just as they started to cross.
The bell upon the south-bound train was ringing automat-
ically.    The whistle was blown before reaching the cross-
ing and again as a danger signal when the engineer saw the
danger of the situation.    The position of the flagman at
the time of the accident is in dispute.    He was in company
with a policeman then on duty at this crossing.

JESSE B. BARTON, attorney for appellant; GEORGE WIL-
LARD, of counsel.

FRANCIS T. MURPHY, attorney for appellee.

Where the abstract does not contain all the instructions
that were given, the court can not consider an exception to
the giving of certain instructions.    Thompson v. People,
192 Ill. 80; Pratt v. Paris Gas Co., 155 Ill. 531; Roodhouse
v. Christian, 158 Ill. 137; City Electric Ry. Co. v. Jones,
161 Ill. 47; Staude v. Schumacher, 187 Ill. 187; Gibler v.
City of Mattoon, 167 Ill. 18.

The court has the right of its own motion to submit a
special finding to the jury.    Norton v. Volzke, 158 Ill. 409.

MR. JUSTICE BALL delivered the opinion of the court.

Appellant insists that the trial court erred in refusing to give certain instructions offered by it. The abstract shows that other instructions were offered by appellant and given by the court to the jury, but does not show what those instructions are. In Thompson v. People, 192 Ill. 81, the Supreme Court say :

" We have repeatedly held that error in giving instructions will be considered upon appeal or writ of error only when all the instructions given are set out in full in the abstract."

If the giving or the refusing to give instructions is assigned for error, it is not sufficient to set out such instructions only, thus sending the reviewing court to the record for the purpose of ascertaining whether the other instructions neutralize the errors complained of. All the instructions asked upon the trial should be set out in the abstract. City of Roodhouse v. Christian, 158 Ill. 137.

The only charge of negligence in the declaration upon which the jury logically could base a verdict for appellee, is that the flagman failed to reasonably signal and warn her of the approaching danger. The flagman, who was on the west side of the tracks, says :

"A passenger train came, and I looked under the cars and saw three ladies on the tracks off on the east side track. I hollered, ' Stop there, you will get run over.' "

The police officer who was with the flagman, by looking under the freight cars, also saw the three women standing east of the freight train. He testified :

" We tried to warn the ladies from coming over all we could. * * * As soon as the flagman and I saw the ladies we hollered to them as loud as we could."

There is much testimony tending to show that the noise of the long freight train passing over the rails of the street car lines was so great as to drown not only the voices of the flagman and police officer, but also to drown the sound of the bell upon the engine of the approaching train.

It is the flagman's duty to know of the approach of

trains and to give timely warning to all persons attempting to cross the railroad tracks, and the public have a right to rely upon a reasonable performance of that duty. C. & A. R. R. Co. v. Blaul, 175 Ill. 183.

There is evidence tending to show that when the freight train had cleared the south sidewalk of Thirty-fifth street, the passenger train was yet seventy-five feet north of that street, and it is argued that the flagman, knowing these women were standing just east of the freight train and about to pass over the west track, could have crossed that west track in perfect safety, and it was his duty to so do, if he stood where he says he was standing, and thus prevent this accident. It is also urged that as a policeman was with him, engaged in the same duty of warning the public of approaching trains, reasonable care required them to be upon opposite sides of these two tracks, under the circumstances here presented. Again, it is said that the flagman was not in or near the middle of the street when the freight train cleared the crossing. This, it is claimed, is shown by the fact that no one of these three women saw him there; that Joseph Hawley testifies that while the freight train was crossing Thirty-fifth street the flagman and policeman were leaning up against the shanty; that Mabel Conway swears that when appellee was struck the flagman was then near the shanty; and that the policeman testifies that while the freight train was passing, he and the flagman were standing over by the shanty. Considering all the evidence, the jury might reasonably find that these two guardians of the public safety were at or so near the shanty that they could not be seen by these women at the instant the freight train cleared the crossing, thereby permitting them to proceed upon their way without warning of the impending peril.

It is also urged that appellee was negligent in not looking and listening more carefully before she started to cross the west track; that had she done so she would have seen the south-bound train, or would have heard the call of the flagman to keep back, and thus have escaped injury. It is

admitted that appellee had passed over this crossing many times before she was injured, and knew that a flagman was on duty there. She says she looked for him on this occasion before she proceeded on her way, and did not see him. Whether she had a right to rely upon the presumption, arising from not seeing him in his proper place, that there was no impending danger, is one of the questions which, in the first instance, at least, was for the jury to determine as a question of fact. C. & A. R. R. Co. v. Pearson, 184 Ill. 387.

It is impossible to frame any rule which will fit the almost infinite variety of circumstances which attend railroad crossing accidents. Hence the Supreme Court has wisely refrained from attempting to formulate a rule which shall fix what a reasonably prudent person would do for his own safety under the circumstances of any particular case. This is not a question of law, but is a question of fact for the jury. Chicago Junction Ry. Co. v. McGrath, 203 Ill. 511.

These two questions, of negligence, if any, upon the part of appellant, and of the exercise of due care for her personal safety, or the reverse, upon the part of appellee, were for the jury. They have decided each of these questions in favor of appellee, that decision has been approved by the learned judge who presided in the court below, and we find no sufficient reason to reverse the finding in these particulars.

Counsel for appellant say that the trial judge erred in submitting an instruction for a special verdict to the jury without having first shown the same to the attorneys in the case. This contention must be decided against appellant. Sec. 58a, Ch. 110 (Hurd), provides:

" In any case in which they (the jury) render a general verdict, they may be required by the court, and must be so required on request of any party to the action, to find specially upon any material question or questions of fact which shall be stated to them in writing, which questions of fact shall be submitted by the party requesting the same to the adverse party before the commencement of the argument to the jury."

It is evident that, when the special finding is requested by a party to the action, such finding must be submitted to the adverse party " before the commencement of the argument to the jury;" but the court, on its own motion, may require the jury to find specially upon any material question of fact. The words of the act do not require the court to submit its special finding to the parties to the action, or to either of them before presenting the same to the jury. The statute is an addition to the common law, and therefore is not to be enlarged by interpretation. The power of the court in this respect is the same as is its power concerning written instructions. Norton v. Volzke, 158 Ill. 402; Bryan v. Lamson, 88 Ill. App. 261.

The criticism of the form of the special finding submitted to the jury by the court is not well founded.

Appellant objects to the judgment upon the ground that it is excessive. In its statement of facts this appears :

"The doctor who attended appellee immediately after the accident testified that he found two contusions on the head, the ear nearly torn off, and bruises on her shoulders and right leg and on the right side of her body. One of the bruises on the head was merely a scalp wound, and in the other the skull was crushed a little. The wound in the thigh, he says, resulted in an abscess, and that the abscess is liable to cause pain and difficulty in walking, because the muscle or tissue is somewhat destroyed. Another surgeon called by appellee testified that he had examined her for the purpose of testifying, and that he found a slight depression in the outer table of the skull which might cause headaches, and he found an aneurism just below the right hip joint which would weaken the limb; but the abscess scar he found to be four inches above the right knee. Eight days after the accident a physician and surgeon employed by the Chicago Terminal Transfer Railroad Company called on appellee and took her statement as to the wounds which she had received, which statement was signed in her name by her husband, he having his wife's authority to sign the same. That statement included the two scalp wounds and the wound to her ear, with bruises on the back and her knee, left forearm and buttocks. The testimony showed that Mrs. Smith was a comparatively healthy woman before the accident. She was unconscious nearly forty-eight hours

after the accident, and remained in bed eight weeks and then sat up in a chair eight weeks before she started to walk, and the first time she was out after the accident was the 15th of May, and that at the time of the trial she suffers pains in her right leg and has pains in her back and has frequent or constant headaches."

An appellate court is very reluctant to substitute its judgment as to the amount of damages for that of the jury and of the trial court. It will not do so unless it is clearly manifest that the jury have abused the discretion vested in them. North Chicago St. R. R. Co. v. Zeiger, 182 Ill. 12.

A verdict for $2,000 for such injuries as are admitted in the foregoing statement does not indicate that the jury was moved by sympathy, by passion or by prejudice. The case seems to have been fairly and deliberately tried and full consideration given to every defense interposed by appellant.

The judgment of the Superior Court is affirmed.