During the tenancy and in the month of October, 1907, there was a fire in the living room of the house on the premises which burned a large hole in the floor, and did other damage to the woodwork of this room and connecting rooms. The defendant requested the landlord to repair, which he finally declined to do. The defendant endeavored to show that he repaired the hole and the damaged woodwork evidently for the purpose of establishing the counterclaim contained in the fourth paragraph of the answer. The evidence was excluded and the ruling was proper. If these were ordinary repairs, not equivalent to an eviction of the premises, the landlord was not bound to make them, for it was expressly covenanted in the lease that he was "to make no repairs or improvements on the premises." If, however, as we may assume, the damages rendered the premises untenantable, they were provided for in another clause of the lease, as follows:

"It is hereby further mutually covenanted and agreed that, in case the buildings or tenements on said premises shall be so destroyed or injured by fire as to become untenantable, then this lease shall become thereby terminated, if said second party shall so elect, and in such case he shall vacate said premises, and give immediate written notice thereof to said landlord, and in such case rent shall be due and payable up to and at the time of such destruction or injury."

The defendant, if the premises were made untenantable, could have vacated them, and absolved himself from any liability for rent accruing after his surrender. Section 187, p. 589, c. 547, Laws 1896; May v. Gillis, 169 N. Y. 330, 62 N. E. 385. The defendant elected, however, to make the repairs and remain in possession, and, of course, continued liable for rent, and to recognize the lease. Smith v. Kerr, 108 N. Y. 31, 15 N. E. 70, 2 Am. St. Rep. 362. The landlord in no case was called upon to make the repairs, and, when he declined to do so, he was strictly within his legal rights. He might have lost a tenant had the defendant availed himself of his option to terminate the lease, and he might have ·been obliged to repair the damages before securing another tenant, but not in pursuance of this lease. The defendant had either of two courses open to him, and availed himself of the one which continued the tenancy; and, if he made the repairs, he did so of his own choice, and cannot hold the landlord for the cost of the same.

The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.

---

KURT v. LAKE SHORE & M. S. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

1. RAILROADS—TRESPASSERS ON TRACK—CARE REQUIRED.

To a trespasser on the track a railroad company owes no duty, except not to willfully, wantonly, or intentionally injure him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1238, 1239.]

2. SAME—ACCIDENT AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.

A person going before daylight around a train obstructing a crossing is not guilty of contributory negligence as a matter of law in failing to see

a train on another track backing at great speed without signals or other warning and without lights, except such as are usually placed at the back end of trains.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1079–1083.]

3. SAME—NEGLIGENCE—MODE OF RUNNING TRAINS—EVIDENCE.

Evidence that a train was run backward, before daylight, at a speed of 30 to 40 miles an hour, without signals or other warning, and without lights, except such as are usually placed at the back end of trains, over a street crossing at which a large number of people were in the habit of crossing at that hour, but which was blocked by another train standing thereon, *held* to warrant a jury in finding that the railroad company was negligent as to one who, in attempting to go around the standing train to get over the crossing, had gone on the tracks outside the bounds of the street, and was there struck by the backing train and killed, he not being a trespasser, and that such negligence was the cause of his death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 981–987.]

4. SAME—"TRESPASSERS" ON TRACK—OBSTRUCTION OF CROSSING—EFFECT OF STATUTE.

A pedestrian who leaves the limits of the highway and attempts to go around a train which has obstructed a crossing for a greater length of time than is permitted by Pen. Code, § 421, and by municipal ordinance, is not a· trespasser, within the meaning of Railroad Law, Laws 1890, p. 1101, c. 565, § 53, providing that no person other than those connected with or employed upon the railroad shall walk upon or along its track except where the same shall be laid across a highway, in which case he shall not walk upon the track unless necessary to cross the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 956, 964, 1220, 1221.

For other definitions, see Words and Phrases, vol. 8, pp. 7094, 7821.]

McLennan, P. J., and Spring, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Wilhelmina Kurt, as administratrix of William Kurt, deceased, against the Lake Shore & Michigan Southern Railway Company. From a judgment for plaintiff and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before McLENNAN,. P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON,.JJ.

Thomas D. Powell, for appellant.
Le Ray Andrus, for respondent.

KRUSE, J. The plaintiff's intestate was struck by a train, causing his death, while he was attempting to pass around another train which blocked the crossing over which he desired to go. At the time he was struck he was outside the bounds of the street, and on or near the track of the train which struck him. The serious question in the case, as I view it, is whether the deceased was a trespasser upon the defendant's railroad tracks in attempting to pass around the standing train. If he was, the only duty the defendant owed him was not to willfully, wantonly, or intentionally injure him. Keller v. Erie R..Co., 183 N. Y. 67, 75 N. E. 965.

The accident occurred on the morning of November 15, 1902, before daylight, at the· Tifft street crossing, in the city of Buffalo. The street

runs east and west, and the defendant's tracks run north and south. Within a space of 200 or 300 feet 10 tracks cross the street at this point. The most westerly four tracks belong to the defendant. The other tracks belong to other railroads. The deceased lived some distance to the east of the tracks, and the steel plant where he worked is west of the tracks. He was a man 55 years of age, industrious, had good health, and presumably all his faculties were normal. He was familiar with the situation, having worked at this same place for about a year, and crossed the tracks daily. On the morning in question, about half past 5 o'clock, he left his home for his work. It was a walk of about 30 minutes from his house to the railroad tracks. He found the crossing blocked by this standing train. There is a dispute as to how long the train had stood there, but from the evidence the jury was warranted in finding that it had remained there for five minutes and upwards. The train was composed of an engine and freight cars. It was headed north, although the engine at the north end was turned around so that the tender pointed north, and the head of the engine was coupled to the freight cars. The head of the train extended from 75 to 150 feet north of the crossing. The engineer of the standing trains puts it 150 feet. It was a long train; the other end extending south, as some of the witnesses testify, as far as they could see. It was standing on the third track, counting from the east side of the defendant's tracks. The headlight was burning, throwing its light to the south. The deceased walked toward the engine; and somewhere within 75 to 150 feet north of the street bounds, and near the head of the standing engine, he was struck by a north-bound train on the second track from the east side. The train which struck him consisted of an engine and two coaches. It came backward, running at the rate of 30 to 40 miles an hour. The proof tended to show that no bell was rung or whistle sounded, or other warning given as the train approached the crossing, and, further, that the only light upon the end of the train was a red light upon the platform, the size of a railroad lantern, although the defendant's witnesses state that there were three lights on the end of the train which struck the deceased—a green light on each side of the car on top, and a red light in the center of the platform. While the tracks are straight to the south for a mile and a half, and an approaching train would ordinarily be in view to a person at the crossing for that entire distance if light enough to see, in this instance it was dark. The train was coming backward. The lights which were visible to a person at the crossing would ordinarily indicate that the train was going in an opposite direction, and, if the deceased had the right to make this detour to cross the tracks as he attempted to do, I think it cannot be said that the deceased was guilty of contributory negligence as a matter of law in going upon these tracks and around this train to get over the crossing. Moreover, in running this train backwards at such a high rate of speed, without giving warning and without other lights than those mentioned, knowing that this crossing was blocked, and that this large number of people was in the habit of crossing there at this hour of the day, the jury was well warranted in finding that the defendant was grossly

negligent in approaching and passing over this crossing, and, unless the deceased was a trespasser, the jury was likewise warranted in finding that it was negligent as to him, and that such negligence was the cause of his death.

The defendant contends that the deceased was a trespasser. Section 53 of the railroad law (Laws 1890, p. 1101, c. 565) provides:

> "No person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same."

This provision was discussed in the case of Keller v. Erie R. Co., 183 N. Y. 67, 75 N. E. 965, and that case is relied upon as an authority to sustain the defendant's contention. It there appeared that the person for whose death the action was brought was walking along the railroad track, using it as a short cut between two streets, at the time he was struck by the train. The accident occurred at the intersection of two railroads, and not at or near a street or highway. It was there held that the injured person was a trespasser. But I do not think it was intended by that decision to hold that every person not connected with or employed upon the railroad is a trespasser, under all circumstances, in going upon the tracks of a railroad elsewhere than within the bounds of a street or highway. The concurring opinion of Chief Judge Cullen makes it clear, I think, that such was not the decision in that case. The case of Gunther v. N. Y. C. & H. R. R. R. Co., 81 App. Div. 606, 81 N. Y. Supp. 395, is also cited by defendant's counsel. But there the injured person was likewise walking along the railroad track, using it for his own convenience. While it appeared that he was prevented from walking directly across the tracks to the street which he intended to reach by cars obstructing his way, it further appeared that the cars were not within the street; that the street did not cross the railroad, and it was there held that, although it was customary for persons to pass along the tracks as the plaintiff did, they were mere licensees, and the only duty the railroad company owed them was not to willfully or wantonly injure them. But I do not think the deceased was necessarily either a mere licensee, whose right depended upon the consent of the defendant, or a trespasser. If the defendant was unreasonably obstructing the street crossing, and it was necessary for the deceased to pass over, I think he had the right to go around the cars which obstructed the crossing, and that that right does not depend upon the consent or acquiescence of the defendant. A railroad company may not unlawfully obstruct a public street and prevent persons having occasion to pass over the crossing from going around cars, even outside of the street limits, if it is reasonably necessary for such persons to do so. Shea v. Sixth Ave. R. R. Co., 62 N. Y. 183, 184, 20 Am. Rep. 480; Mayer v. Chicago & Alton R. R. Co., 63 Ill. App. 309, 112 Ill. App. 149; Chicago, etc., R. R. Co. v. McGrath, 107 Ill. App. 100, affirmed in 203 Ill. 511, 68 N. E. 69; Smith v. Railroad Company, 42 Am. & Eng. Railroad Cases, 105. This right is derived from the common law (2 Bl. Com. 36, Campbell v. Race, 61 Mass. [7 Cush.] 408, 54 Am. Dec. 728), and I think it was not taken away by the provisions of section

53 of the railroad law (Laws 1890, p. 1101, c. 565), to which I have referred. It is true that a literal reading of the provisions of that section would include the deceased, since he was not employed upon or connected with the railroad, and was outside the bounds of the highway, strictly speaking, but such a construction would also include persons using private crossings, and even persons crossing the tracks in going to or from trains at railroad stations. It appears in this case that the crossing had been blocked longer than three minutes, contrary to the provisions of the ordinances of the city of Buffalo, and the inference seems permissible that this train had stood on this crossing even longer than five minutes, contrary to the provisions of section 421 of the Penal Code. I think the jury was well warranted in finding that the railroad company was unreasonably and unlawfully obstructing this crossing, and that it was reasonably necessary for the deceased to go around the train in order to get across the tracks, and that the defendant was grossly negligent in running its train as it did.

I think the learned trial justice correctly submitted the case to the jury, and that the verdict is well warranted by the evidence.

The judgment and order should be affirmed, with costs. All concur, except McLENNAN, P. J., and SPRING, J., who dissent on the ground that plaintiff's intestate was a trespasser, and was also guilty of contributory negligence.