TERENCE E. McDADE, Appellant, v. INTERNATIONAL
RAILWAY COMPANY, Respondent.

Street railways — duty of motorman operating trolley car to
look for pedestrians or obstructions on track and stop to
avoid accident — negligence — contributory negligence —
question for jury.

1. The motorman of a trolley car is bound to keep his eyes open,
not only because of the duty he owes his passengers but the duty he
owes to pedestrians and those whose work take them into the street.
If he sees something ahead of him on the track, which would indicate
to a reasonably prudent man that there was danger or that it would
not get off the track before the car reached it, his duty is to slow up
and stop his car if possible. He has to exercise reasonable care even
to those whom he could see or should have seen were in a position of
danger.

2. Plaintiff, a police officer, in the performance of his duty halted
an automobile, because it was running without any headlights, which
came to a stop on a trolley track with the right-hand wheels between
the rail and the sidewalk. While he was taking the number of the
automobile a trolley car, without any warning, came down the street
and struck him and the driver of the automobile; the evidence shows
that the motorman was not looking where he was going but was
winding up the sign overhead just before and at the time he struck the
machine and plaintiff, and that the trolley did not slacken its speed
but ran a distance of about thirty feet after the collision. It was
error, therefore, for the trial justice to dismiss the complaint, saying
that " the car is not obliged to stop because something is ahead on the
track. He has a right to go along, he was going at a moderate speed."

3. It was the duty of the police officer to exercise reasonable care
to look out for himself, but whether he did so or not was a question
for the jury. He had a duty to perform and this duty called him to
the middle of the street. Whether, in performing these duties and
standing by the automobile, at or near the car track, to take its number
to make a report of the case if necessary, the plaintiff exercised the
care of a reasonably prudent man under the circumstances was a
question for the jury.

McDade v. International Railway Company, 201 App. Div. 874,
reversed.


(Argued January 11, 1923; decided January 23, 1923.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 7, 1922, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*William J. Flynn* and *Hamilton Ward* for appellant. The questions involved here were essentially questions of fact to be decided by a jury. (*Xenodochius* v. *Fifth Ave. Coach Co.*, 129 App. Div. 26; *Riley* v. *Interurban Ry. Co.*, 108 App. Div. 254; *O'Connor* v. *Union Ry. Co.*, 76 App. Div. 99; *Fitzsimmons* v. *Isman*, 166 App. Div. 262.)

*Olin T. Nye* for respondent.

Crane, J. The defendant is a railway corporation operating trolley cars through Forest avenue in the city of Buffalo. The plaintiff was a police officer in that city. About nine o'clock in the evening of November 25, 1919, the plaintiff noticed an automobile coming on Forest avenue in a westerly direction without any headlights. This was in violation of the law. The officer called to the driver of the automobile to stop. The automobile came to a stop on the track with the right-hand wheels between the rail and the sidewalk. The officer went over to the automobile to talk with the driver about the lights and to get the number of the car. His own story of the occurrence, in view of the dismissal of his case, might well be quoted at this point, as it is not very long: "As near as I can guess, about nine o'clock I had the beat on Forest avenue, and on the northwest corner of Forest and Hawley street I saw an automobile coming with the two headlights out. I walked out towards the curb and put up my hand for him to stop the automobile. * * * He stopped within ten or fifteen feet after he passed me. * * * I went up to the front of the car, I said: 'Your lights are not lit.' * * * He got out and explained to me the difference in the circuits. We

came around and looked at the back. He said his tail light was lit, and it was. * * * We were standing about a foot and a half from the rear of the car, towards the north side, looking at the southeast corner from the rear of the car, that I could see his rear number. I had a book and pencil and was taking the number, and without any warning at all the street car came down and hit the two of us."

The motorman of the car was not looking where he was going but was winding up the sign overhead just before and at the time he struck the machine and the plaintiff. The trolley did not slacken its speed and went a distance of about thirty feet after the collision. The plaintiff was corroborated by other witnesses, one of whom said that the policeman and the automobile were standing in the street for only a minute before the car crashed into them.

The trial justice dismissed the complaint. He said: " The car is not obliged to stop because something is ahead on the track. He has a right to go along, he was going at a moderate speed." We do not agree with this. The motorman was bound to keep his eyes open, not only because of the duty he owed his passengers, but the duty he owed to pedestrians and those whose work took them into the street. If he saw something ahead of him on the track, which would indicate to a reasonably prudent man that there was danger or that it would not get off the track before the car reached it, his duty was to slow up and stop his car if possible. He had to exercise reasonable care even to those whom he could see or should have seen were in a position of danger. (*Bragg* v. *Central New England Ry. Company*, 228 N. Y. 54; *Mintz* v. *International Ry. Company*, 227 N. Y. 197; *Feldman* v. *New York Central & H. R. R. R. Co.*, 142 App. Div. 339; affd., 205 N. Y. at page 553.) It was also the duty of the police officer to exercise reasonable care to look out for himself, but whether he did or not, in view of the facts of this case, was a question for the jury. The police

officer had a duty to perform and this duty called him from the sidewalk into the street. It was part of his work to see that laws and ordinances were obeyed. He did the right thing when he stopped the automobile and told the driver that his front lights were out. Driving through the city streets without lights at nine o'clock at night was extremely dangerous. A serious accident might reasonably be anticipated from such recklessness. It was also the duty of the police officer to take the number of the car and to make a report of the case if the circumstances, in his opinion, justified it. Whether the plaintiff in performing these duties and standing by the car at or near the car tracks exercised the care of a reasonably prudent man under the circumstances was a question for the jury. His business was not unlike that of the street sweepers, firemen and others who have a special duty to perform in the streets of our cities. (*Xenodochius* v. *Fifth Avenue Coach Company,* 129 App. Div. 26; *Reilly* v. *Interurban St. Ry. Co.,* 108 App. Div. 254; *Bengivenga* v. *Bklyn. Hts. R. R. Co.,* 48 App. Div. 515.)

For these reasons we think that the judgment of the Appellate Division should be reversed and this case sent back for a new trial, with costs to abide the event.

H<span style="font-variant:small-caps">iscock</span>, Ch. J., H<span style="font-variant:small-caps">ogan</span>, C<span style="font-variant:small-caps">ardozo</span>, P<span style="font-variant:small-caps">ound</span>, M<span style="font-variant:small-caps">c</span>-L<span style="font-variant:small-caps">aughlin</span> and A<span style="font-variant:small-caps">ndrews</span>, JJ., concur.

Judgments reversed, etc.