DAVID PLISS, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Fourth Department, November 14, 1923.

Railroads — action to recover for injuries to motor truck which was struck by defendant's train at public crossing — truck was being used to haul gravel for highway construction — in order to unload near concrete mixer truck was left standing on track — truck might have been unloaded at safe point though not so conveniently — truck could not be removed as train approached due to gravel near rear wheels — plaintiff was guilty of contributory negligence.

In an action to recover for injuries to plaintiff's motor truck, it must be held that the plaintiff was guilty of contributory negligence where it appears that the truck was being used to haul gravel for highway construction and at the time it was struck by plaintiff's train it was standing on the railroad track while a load of gravel was being unloaded; that the truck was left on the track for the purpose of unloading the gravel near the concrete mixer; that the gravel might have been unloaded at a safe point though not so conveniently for its use in the mixer; that when the train was first seen approaching, the driver of the truck endeavored to move it by its own power but could not do so because the wheels spun around in the gravel which had been dumped from the truck; that on previous occasions the same difficulty in moving the truck after the gravel had been dumped had been experienced.

DAVIS and CROUCH, JJ., dissent, with opinion.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 17th day of March, 1923, upon the verdict of a jury.

*John S. N. Sprague,* for the appellant.

*Hamilton Ward* [*Dana L. Spring* of counsel], for the respondent.

SEARS, J.:

At the time of the accident a highway which crossed the defendant's right of way in the village of Gowanda between the stations of Gowanda and Collins, was being improved under a State contract. The plaintiff was the owner of a truck which was driven by his employee and was being used to haul gravel in connection with the construction work. The practice had been to back the truck up to the concrete mixer and then dump the load onto the ground as near the mixer as possible. The gravel was then shoveled directly into the mixer. Whenever the gravel was not dumped so that it could be shoveled into the mixer, it had to be carried to a place near the mixer in wheelbarrows. It was, therefore, more convenient to dump the truck in the immediate vicinity of the mixer. As the work progressed the mixer was moved and

on the day before the accident it was apparent that the mixer would on the day in question approach very close to the track.

On the morning of the accident the driver of the truck on one of his trips between the place where he got the material and the place where the work was being done, stopped at the defendant's Gowanda station and told the telegraph operator to give a " slow order " to Collins, that being the next station north from Gowanda. The answer of the telegraph operator was excluded from the evidence.

During the morning of the day of the accident the concrete mixer was gradually moved nearer and nearer to the defendant's track until at the time of the accident the mixer was within ten feet. To reach as near as he could to the mixer at this point the driver backed the truck across the track, bringing the rear of the truck close to the mixer, but leaving the front part of the truck on the track. This position was taken by order of the man who had the State contract.

With the truck in this position, the front end being on the track, the load was dumped. The bottom of the body of the truck was V-shaped, and the dumping was done by raising the sideboards so that the contents of the truck would slide out. When the gravel was almost entirely unloaded and the box of the truck was being scraped out by the driver in order that the sideboards might be replaced in the closed position, and while eight or ten men were shoveling the gravel away, the crossing bell started ringing and one of the men present started to run up the track to flag the train. The track is substantially straight to the north for a distance of 700 or 800 feet where it curves, and the man saw the train just as he was starting up the track to flag it. He ran about 200 feet waving his hands and by that time the train was close to him. The engineer leaned out of the cab and motioned with his hand to the man. The man got off the track and the train passed him without slowing down until the truck was struck and then ran a further distance of about 300 feet before it stopped. The train was a freight train with empty cars and its speed was estimated at from ten to twenty-five miles an hour.

When the train came around the curve the whistle was blown and the driver of the truck jumped to his seat and tried to move the truck by its own power but could not do so because the wheels spun around in the gravel, which had been dumped from the truck. The driver called to the men who were shoveling the gravel to get behind and push. Some started to push the truck when someone called to the driver to jump out, which he did just before the train struck the truck.

Fourth Department, November, 1923.          [Vol. 207

On previous occasions the same difficulty in moving the truck after the gravel had been dumped had been experienced for the gravel fell from the truck all about the rear wheels. At the time of the accident the truck had been in the same position for at least three minutes.

There was a failure to show freedom from negligence on the part of the plaintiff. To stop a motor vehicle upon a railroad track and then unload the contents so that they would fall about the rear wheels and fasten the vehicle in that position, as experience had shown to be the effect of their practice, was clearly negligence. The railroad had a paramount right of way and the truck driver, in the exercise of care, could not stop his truck so that an accident could be avoided only by the stopping of an approaching train. It was not a case of necessity. Other methods of doing the work, though less convenient, were thoroughly practicable.

The plaintiff also seeks to support the judgment in his favor on the theory that the failure to stop the train was the sole proximate or legal cause of the accident. His contention is that the negligence of the plaintiff, if any, was complete, and that a new situation was presented upon which the defendant's locomotive engineer was called upon to act after the negligence of the plaintiff had spent its force, and, therefore, that the negligence of the plaintiff was not the proximate or legal cause of the accident. (*Feldman* v. *N. Y. C. & H. R. R. R. Co.*, 142 App. Div. 339; affd., 205 N. Y. 553; *Bragg* v. *Central N. E. R. Co.*, 228 id. 54; *Davies* v. *Mann*, 10 M. & W. 546.)

It is unnecessary to consider the application of the principle of the cases cited to the facts in the record here for the reason that the questions of fact which such a theory presents were not submitted to the jury for decision. The charge of the court was in general terms, although the court did say that to find a verdict for the plaintiff the jury must find not only that the defendant was negligent but also that " the plaintiff and his servant operating that truck were entirely free from any negligence that helped to bring about this injury," and again that, " if the plaintiff or his servant operating that truck were guilty of negligence in any degree however slight that contributed to this injury without which the injury would not have happened notwithstanding the defendant's negligence, then the plaintiff cannot recover." The balance of the charge, however, shows that these statements, in relation to proximate cause, were but the conventional phrases used in defining contributory negligence. This becomes clear when the whole charge is considered, for the court finally said, " if you find that the plaintiff, acting through his servants and these

men in control of the truck — if you believe that he did not act as a prudent man would act under the circumstances; then he is chargeable with negligence, and the plaintiff cannot recover. Put yourselves right in the place of those men, and as prudent men, would you have backed your truck onto a railroad track and left it there under those circumstances? If a prudent man would have done that, then they were justified in doing it; if a prudent man would not have done it, under the circumstances, then they were not justified in doing it. That is about all there is to it." There is in this no intimation of any theory that the plaintiff could recover in spite of the negligence on the part of the driver in placing his truck on the track and there unloading it. But the question was whether such acts were or were not negligent, and the finding of the jury is to the effect that these acts were not negligent, a finding which is contrary to the law.

The judgment should be reversed on the law and the facts and a new trial granted, with costs to the appellant to abide the event.

All concur, except DAVIS and CROUCH, JJ., who dissent in an opinion by DAVIS, J.

DAVIS, J. (dissenting):

We are in agreement, I think, that the verdict of the jury established the facts that the defendant had notice of the condition of the work at the crossing, and that the collision of the train with the truck constituted actionable negligence.

A majority of the court do not believe that the evidence is sufficient to show freedom from contributory negligence on the part of the plaintiff's employee in charge of the truck. With this view I do not agree.

A railroad company has no right to construct its tracks across a highway except by legislative grant. (Railroad Law, § 8, subd. 4; *Delaware, L. & W. R. R. Co.* v. *City of Buffalo*, 158 N. Y. 266; 33 Cyc. 191.) The right it thus obtains is subject to the dominant right of the sovereign State. It may by the necessities of the situation have a paramount right of way at crossings over travelers along the highway. But it has no right superior to the public interest. (*Kurt* v. *Lake Shore & Michigan Southern R. Co.*, 127 App. Div. 838, 842; affd., 194 N. Y. 598; Penal Law, § 1985.) On the other hand, its right is a qualified one subject to regulation, and its right even to move its trains over a street or crossing must yield to that of public necessity. (*Railroad Co.* v. *Richmond*, 96 U. S. 521.) This is commonly illustrated in cases of fire where it becomes necessary to lay fire hose from hydrants across the track. If with knowledge

of the facts a train proceeds, the company is liable in damages not only for the loss of apparatus, but to an individual owner whose property burns by reason of its act. (*Phenix Ins. Co. v. New York Central & H. R. R. R. Co.*, 122 App. Div. 113; affd., 196 N. Y. 554; *Metallic Compression Casting Co. v. Fitchburg R. Co.*, 109 Mass. 277.) The same rule applies where it unnecessarily blocks a crossing thus preventing apparatus reaching the fire. (*Houren v. Chicago, Milwaukee & St. Paul R. Co.*, 236 Ill. 620; 20 L. R. A. [N. S.] 1110; *Cleveland, C., C. & St. L. R. Co. v. Tauer*, 176 Ind. 621; 96 N. E. Rep. 758; 39 L. R. A. [N. S.] 20.)

The State was prosecuting a public work in building an improved highway. It had let the work to a contractor. It was necessary to lay concrete within two or three feet of the track. It was as important to the people of the State that this public work be done expeditiously and economically as it was to the defendant that its trains move rapidly. In prosecuting such public work, those engaged therein were in a different position from that of ordinary travelers on the highway. To those engaged in a public duty even on private property the owner may be liable for affirmative acts of negligence, and the question of their contributory negligence is for the jury. (*Racine v. Morris*, 136 App. Div. 467; affd., 201 N. Y. 240.) They are rightfully on the premises and the owner owes them the duty of exercising reasonable care for their safety under the circumstances. (*Meiers v. Koch Brewery*, 229 N. Y. 10, affg. 180 App. Div. 450, decided in this court.) There is authority that one who is on the premises in the performance of a duty is there by implied invitation. (*Toomey v. Sanborn*, 146 Mass. 28; *Anderson & Nelson Distilleries Co. v. Hair*, 103 Ky. 196; Thomp. Neg. [2d ed.] § 981; 29 Cyc. 457.) In this case there was no ownership by the defendant of the land at the crossing. (*Bangor, Oldtown & Milford R. Co. v. Smith*, 47 Maine, 34; 33 Cyc. 260.) Its easement to use it was no greater than that of the public (*Flanagan v. N. Y. C. & H. R. R. R. Co.*, 70 App. Div. 505; affd., 173 N. Y. 631; 33 Cyc. 260) and subordinate to the sovereign right of the State in the prosecution of a public work. The contractor had been authorized by the State to do the work, and with his employees had thereby acquired the rights reasonably necessary in its performance.

The defendant had notice of the conditions at the crossing and owed a duty of active vigilance and care toward those at work there. On the other hand, those engaged in the work could not in the diligent performance of their duties give the same degree of care to their safety as a wayfarer. The law does not exact it. (*Ominger v. New York Central & H. R. R. R. Co.*, 4 Hun, 159; *Lewis v. Binghamton R. R. Co.*, 35 App. Div. 12; *Noonan v. N. Y.*

*C. & H. R. R. R. Co.*, 16 N. Y. Supp. 678; affd., 131 N. Y. 594; *Bengivenga* v. *Brooklyn Heights R. R. Co.*, 48 App. Div. 515; *Wells* v. *Brooklyn Heights R. R. Co.*, 67 id. 212, 215.) They may rely on the fact that others will perform their duty to avoid running them down or injuring their property. (*Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 383, 389.) The strict rule of vigilance and care ordinarily applicable to others under different circumstances to avoid the charge of contributory negligence may not be applied to those engaged in a public duty. (*McDade* v. *International R. Co.*, 235 N. Y. 11.)

The concrete mixer was near the track. The road leading up to it was partly torn up. The practicable way to deliver the load of gravel was to back the truck across the track and dump it. The operation took about three minutes. The truck ordinarily after dumping started and moved without delay. Ten or eleven loads had been delivered that morning. Only once before that day in dumping the load had the truck been " stuck," and then it got out on its own power. On this occasion the motor had been left running, the driver was on the truck and it could have been moved on short notice. The driver himself had given notice to defendant's agent that the mixer and truck were to be at the track that day, and asked him to give a " slow order " to the trains. There was no legal duty resting on the contractor to dump the gravel on the other side of the track and bring it over in wheelbarrows to serve the convenience of defendant. Even the greater safety of such a plan is doubtful. If it is a question of fact as to whether reasonable care required it, the jury have decided it.

The usual signals for the crossing were given, but it is a question of fact if these were, under the circumstances, sufficient not only to relieve the defendant from negligence but to charge the driver with contributory negligence. He was in a position of danger while performing a duty in connection with work of the State. Whether in performing those duties he had the right to rely, in relaxing his vigilance, on the notice given the defendant and its duty to slow up or stop the train if possible when it appreciated the situation, and whether he exercised the care of a reasonably prudent man under the circumstances, were questions for the jury. (*McDade* v. *International R. Co., supra; Smith* v. *Bailey*, 14 App. Div. 283.)

There is, it seems to me, ample evidence upon which the jury might find, as they did, that the driver was free from contributory negligence. It is perhaps true that the charge dealt in abstractions and lacked the definite application of the law to the facts that is required. (*People* v. *Odell*, 230 N. Y. 481; *People* v. *Montesanto*, 236 id. 396; *Matter of Taylor*, 197 App. Div. 865.) But the

omission to state definitely what I believe to be the correct rule was favorable to defendant.

I favor affirmance of the judgment.

CROUCH, J., concurs.

Judgment reversed on the law and facts and new trial granted, with costs to appellant to abide event.