HESTER A. McCLAIN, *Appellee,* v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

No. 17,837.

SYLLABUS BY THE COURT.

1. NEW TRIAL—*No Motion—Errors Waived.* Ordinarily any ruling or ground for which a new trial may be granted is waived by the neglect of a party to ask for a new trial.

2. MOTION—*For Judgment on Special Findings—When Sustained.* Where no motion for a new trial is made, but instead a party moves for judgment on the special findings, notwithstanding the general verdict, the question is whether, after indulging every reasonable inference in favor of the general verdict, the special findings returned by the jury are so antagonistic to it as to be absolutely irreconcilable with it, and so complete in themselves as to warrant the entry of judgment thereon.

McClain v. Railway Co.

3. CONTRIBUTORY NEGLIGENCE — *Street Crossing — Gates Not Lowered—Reasonable Care.* Where gates have been erected and maintained by a railroad company where its road crosses a public street in a city, and which are to be lowered by a gateman when trains are passing over the street, the fact that such gates are up when a person approaches the crossing is some assurance to him that he can safely proceed to cross, and while it will not excuse him for a failure to exercise reasonable care for his safety, he is not required to exercise the same vigilance as he would be at a crossing where gates had not been erected and maintained.

4. ——— *Same.* A traveler approached a railway crossing over a much traveled street in a populous city where gates had been built and maintained, and finding them open proceeded to cross the street without looking up the track, where a passenger train was approaching from the north at an excessive and unlawful rate of speed, and which he could have seen if he had looked. After starting across the tracks a freight train came over the crossing from the other direction and caused him to stop between the two tracks in a space eight and one-half feet wide. After standing there about fifteen seconds he was struck by the engine of the passenger train and killed. Whether he exercised due care for his own safety, in view of the conditions existing at the crossing and under the circumstances of the case, or was guilty of contributory negligence, is held to be a question of fact for the determination of a jury.

Appeal from Sedgwick district court, division No. 2. Opinion filed March 8, 1913. Affirmed.

*M. A. Low,* and *Paul E. Walker,* both of Topeka, for the appellant.

*David Smyth, A. E. Helm,* and *J. W. Smyth,* all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the appellee, Hester A. McClain, to recover damages from the appellant, The Chicago, Rock Island and Pacific Railway Company, for negligently causing the death of her husband, W. M. McClain. The appellant operates a line of railway through the city of Wichita and across

Douglas avenue, the principal street of the city. The railroad is built upon Meade avenue, which runs north and south, and at the intersection of Meade and Douglas avenues it consists of two tracks. The passenger station of appellant is located on the west side of Meade avenue and immediately south and adjoining Douglas avenue. At the intersection of these streets crossing gates had been placed, as required by an ordinance of the city, but they appear to have been out of repair at the time in question. The two tracks across Douglas avenue were eight and one-half feet apart and the distance from center to center of the tracks was thirteen feet, two and one-half inches. On the afternoon of June 28, 1909, W. M. McClain, his son and another companion were walking on the north side of Douglas avenue going towards his home in the eastern part of the city. When they arrived at the crossing a considerable number of people had congregated on the depot platform and there were a number of cabs and other vehicles in the street near there awaiting the arrival of the passenger train. After they had started across Douglas avenue a north-bound freight train, using the east track, began to cross Douglas avenue and W. M. McClain, who was about sixty-eight years of age, and his companion stopped on the west side of the track to await the passage of the train, while his son hurried over in front of the train. While standing between the east and west tracks awaiting the passage of the freight train a south-bound passenger train, traveling at a speed of from twenty to thirty miles an hour, came down upon them. The buildings on Douglas avenue extended to Meade avenue, but the distance from the west edge of Meade avenue to the west track was about thirty feet. When McClain arrived within twenty feet of the west track he could have seen an approaching train from the north a distance of about a half mile if he had looked for it. At the time the gates were up and there was no watch-

man at the crossing. McClain halted between the two tracks awaiting the passage of the freight train about fifteen seconds before he was struck by the passenger train. From two or four seconds before he was struck some persons near by saw his danger and shouted to him. Apparently the first he knew of the approach of the passenger train was the sounding of a shrill alarm whistle about two hundred feet away. On hearing this whistle the deceased became confused and in his excitement stepped nearer to the west track, turning his back towards the approaching passenger train. He was caught by some part of the engine, thrown towards the top of it, and in some way he was drawn under the train and killed.

In the petition the negligence alleged was the running of the train at a dangerously high rate of speed across a public street near the business center of the city contrary to an ordinance of the city limiting the rate of speed to five miles an hour, also, the failure of the appellant to have the automatic safety gates closed as required by another ordinance. The absence of a watchman to warn persons about to cross the track of the approach of trains was alleged, and also the failure of the engineer on the passenger train to give proper signals on approaching Douglas avenue, as well as the giving of the shrill blast when the engine was so close to McClain as to startle and confuse him. On the part of the appellant it was contended that McClain was guilty of contributory negligence in going upon the crossing and standing there for some time without looking for the approach of a train on the west track, when he could have had a view towards the north for a distance of about a half mile if he had looked. The jury awarded damages against the appellant in the sum of $1999, and returned answers to special interrogatories which were submitted to it. No motion for a new trial was made, but appellant asked for judgment on the special findings.

No objections are made to instructions or rulings on the trial, and since no motion for a new trial was made no question can be raised here as to the sufficiency of the evidence to sustain the findings of the jury. It has been determined that any matter or ground for which a new trial may be granted is waived by neglect of the party to ask for a new trial. (*Nesbit v. Hines,* 17 Kan. 316; *City of Atchison v. Byrnes,* 22 Kan. 65; *Decker v. House,* 30 Kan. 614, 1 Pac. 584; *McNally v. Keplinger,* 37 Kan. 556, 15 Pac. 534.)

One of the grounds for a new trial is that the verdict is contrary to the evidence, and before that question can be considered on appeal a motion for a new trial based on that ground must have been submitted to and decided by the trial court. On the motion for judgment on the special findings mere inconsistency in the findings will not avail, as that is a ground for a new trial, but the question is whether, after indulging every reasonable inference in favor of the general verdict, the special findings are so antagonistic as to be absolutely irreconcilable with it, and so complete in themselves as to warrant the entry of judgment thereon. (*Osburn v. Railway Co.,* 75 Kan. 746, 90 Pac. 289.)

Upon some of the issues herein no interrogatories were submitted and, hence, all of the facts in the case are not embraced in the special findings. The principal ones upon which judgment was asked were that McClain was familiar with the crossing, that he went upon the crossing without **looking north for** an approaching train, that after he entered upon the crossing the view was unobstructed for one-half mile, and that if he had looked when he started across he could have seen the passenger train in time to have retreated to a place of safety, and that when he reached the east track he stood there about fifteen seconds before he was struck and from eight to ten seconds intervened from the time the engineer sounded the whistle a block away and the time that he was struck by the train. It

is insisted that as he was well acquainted with the crossing it was incumbent upon him to use his eyes and ears to discover whether there was a train approaching upon the west track, and if he had done so he would have seen the train, and not having exercised that precaution he was guilty of contributory negligence which bars, a recovery for his death, notwithstanding the negligence of the railway company.  It must be held that the railway company was guilty of negligence, notwithstanding the fact that the engineer applied the emergency brakes and did all he could to stop the train and avoid striking McClain after his peril was discovered.  The speed at which the train was running across the principal street of a populous city while it was unguarded was negligence beyond question.  It is contended that to run a train from twenty to thirty miles an hour over a street which is usually thronged with travelers, a fact well known to the engineer, was a wanton act and constitutes negligence so gross as to cut off the defense of contributory negligence.  No special finding was made as to the rate of speed the train was running, but it was alleged, and there is testimony tending to show, that the train came across the street at a speed of thirty miles an hour, and as the case is presented every question is resolved in favor of the general verdict, and in its support we may infer any rate of speed of which there is evidence to support.  The running of a train at an excessive rate of speed through a populous city over an unguarded crossing of a much used street which the engineer must have known was usually thronged with pedestrians and vehicles was an extremely reckless act, and if a finding of gross negligence had been made it would not have been without support.  However, if it be assumed that the negligence of the appellant was not gross nor such as to cut off the defense of contributory negligence, the question whether McClain was guilty of such negligence as to bar a recovery must be regarded as one of fact for the determination

of the jury. Ordinarily if a traveler proceeds across a railroad track without taking the precaution to ascertain if there is a train in dangerous proximity he does so at his peril. The application of this rule is modified to some extent by the circumstance that gates have been erected and watchmen employed at crossings. In such case a traveler is not required to exercise the same viligence when he approaches a track as he would at crossings not so guarded. The railroad track itself is a warning of danger which a traveler can not safely ignore, but when it is the custom of a railroad company to provide gates or flagmen and thus give other warnings of danger that a train is about to pass, the absence of such warnings may lead a traveler to believe that he can safely proceed or that there will be time to cross before a train will pass. The fact that gates have been erected and are open when a traveler approaches a crossing will not justify him, of course, in closing his eyes and ears when passing over railroad tracks, but it is a circumstance to be weighed by the jury in determining whether at the time he was using the care that a reasonable and prudent man would and should exercise.

In *Glushing v. Sharp,* 96 N. Y. 676, a case where a collision occurred at a crossing when gates which had been erected there were raised as the injured party approached, it was said:

"The raising of the gate was a substantial assurance to him of safety, just as significant as if the gateman had beckoned to him or invited him to come on, and that any prudent man would not be influenced by it, is against all human experience. The conduct of the gateman can not be ignored in passing upon plaintiff's conduct, and it was properly to be considered by the jury with all the other circumstances of the case." (p. 677.)

The circuit court of appeals in *Blount v. Grand Trunk Ry. Co.,* 61 Fed. 375, 9 C. C. A. 526, sanctioned that view and, while holding that the right of a pe-

destrian to rely upon the lowering of the gates was not absolute, Judge Taft said:

"It is undoubtedly true that the failure to lower the gates modifies the otherwise imperative duty of travelers, when they reach a railway crossing, to look and listen, and the presence of such a fact in the case generally makes the question of contributory negligence one for the jury, when otherwise the court would be required to give a peremptory instruction for the defendant." (p. 378.)

In *Palmer et al. v. N. Y. C. & H. R. R. R. Co.*, 112 N. Y. 234, 19 N. E. 678, an injury occurred at an open crossing where the gates had been erected and a person stationed there to open and close them when trains passed, it was held that whether the gates were erected by the volition of the company or by command of the law, "the duty of the company was imperative, and it is obvious that an open gate was a direct and explicit assurance to the traveler that neither train nor engine was rendering the way dangerous—that none was passing. A closed gate was an obstruction preventing access to the road; an open gate was equally positive in the implication to be derived from it that the way was safe. Nothing less could be implied and no other conclusion could be drawn from that circumstance." (p. 241.)

The supreme court of Rhode Island, however, said that "invitation" was too strong a term to be used as the effect of an open gate, but it did indorse the theory which most of the courts have held, that "open gates, or the absence of the usual signals of an approaching train or engine, are implied assurances that no train or engine is approaching the crossing with intent to cross the street, upon which travelers on the street have a right to rely, and that if a traveler on the street be injured while crossing the railroad in such circumstances the question whether he was guilty of contributory negligence is for the jury." (*Wilson*

*v. N. Y., N. H. & H. R. R. Co.*, 18 R. I. 491, 493, 29 Atl. 258.)

In Pennsylvania the supreme court takes a different view and holds that the failure to stop, look and listen, even where the gates are open, is more than negligence—it is negligence *per se*. (*Greenwood v. Railroad Co.*, 124 Pa. St. 572, 17 Atl. 188, 3 L. R. A. 44, 10 Am. St. Rep. 614.)

(See, also, *Koch v. Southern California Ry. Co.*, 148 Cal. 677, 84 Pac. 176, 4 L. R. A., n. s., 521.)

The authorities, however, are generally in accord with the decisions from which quotations have been made, and among them may be cited *Williams v. Railroad Co.*, post, p. 35, 53 Pac. 834; *Scaggs v. President, etc.*, 145 N. Y. 201, 39 N. E. 716; *Merrigan v. Boston & Albany Railroad*, 154 Mass. 189, 28 N. E. 149; *Burns v. The North Chicago Rolling Mill Co.*, 65 Wis. 312, 27 N. W. 43; *State v. B. and M. R. R. Co.*, 80 Maine, 430, 15 Atl. 36; *Richmond v. Railway Co.*, 87 Mich. 374, 49 N. W. 621; *C., St. L. & P. R. R. Co. v. Hutchinson*, 120 Ill. 587, 11 N. E. 855; *Railway Company v. Schneider*, 45 Ohio St. 678, 17 N. E. 321; *Woehrle v. Minnesota Transfer Ry. Co.*, 82 Minn. 165, 84 N. W. 791, 52 L. R. A. 348; *Indianapolis Union Railway Company v. Neubacher et al.*, 16 Ind. App. 21, 43 N. E. 576, 44 N. E. 669.

It is argued that the passing of the freight train when the gates were up was a notice to McClain that the gates were either not in use or the gateman was not doing his duty at the time, and it therefore became his imperative duty to take the same care for his safety that he would if no gates had been erected there. It appears, however, that he had started across the track before the freight train came upon the crossing. When he came to the crossing and saw the gates up he had reason to think that he could safely proceed, and that would tend to quiet any apprehension of a train coming from either direction. When the freight

train started across with the gates unclosed he had reason then to believe that the gateman was neglecting his duty or that for some reason the gates were not in operation. It is insisted that his failure to leave the crossing or put himself in a place of safety after discovering that the freight train was passing with the gates up was contributory negligence. However, the time between when he discovered, or should have discovered, that the freight train was going to pass with the gates up and the time when he was struck by the passenger train was very short, and, besides, the coming of the freight train may have confused him. After he went upon the crossing and learned that the freight train was going to pass over he had then to determine whether to hurry across in front of that train, stand still between the tracks in a space of eight and one-half feet, or retreat to the west side of the crossing. One of his companions made a rapid movement and crossed in front of the freight train, while he and another companion stopped between the tracks. In *Directors, &c. of North Eastern Railway Co. v. Wanless,* L. R. 7 H. L. 12 (7 Eng. & Irish App. 12), a person was injured at a point where gates had been erected but were open at the time he entered upon the crossing. When he went upon the crossing a train other than the one which struck him passed in front of him, and it was contended that this was a notice to him that the gates were not being operated, or rather that it was inconsistent with the theory of closed gates when trains were passing. The lord chancellor said:

"It appears to me that the circumstance that the gates at this level crossing were open at this particular time amounted to a statement, and a notice to the public, that the line at that time was safe for crossing, and that any person who, under those circumstances, went inside the gates, with the view of crossing the line, might very well have been supposed by a jury to

3—89 Kan.

have been influenced by the circumstance that the gates were open. Then, when inside the gates, the boy who in this case was injured, saw what was inconsistent with the gates being open, namely, he saw one train passing, and it may very possibly be the case that that circumstance embarrassed him, and that his eyes and attention being fixed upon that particular train, when it passed out of the way he failed to see the other train. He appears not to have seen it, but attempted to cross the line, and was knocked down and injured. It is quite clear he might have seen the other train—there is no doubt about that—but the result of the state of facts only comes to this, that being brought upon the line through the circumstance of the gate being open, he was placed in a position which was more or less embarrassing, and he did not use his faculties so clearly as he might have done under other circumstances." (p. 15.)

It was therefore held that it was a question for the jury to consider, whether he was using ordinary diligence in caring for himself. Here the jury, in a special finding, in response to a question as to what there was to prevent McClain from getting off the track and avoiding a collision if he had known of the approach of the train, answered: "Excitement, too short time, and high rate of speed." In view of the open gates, the absence of a watchman, the excessive and unlawful speed of the train, the number of people and vehicles near the crossing at the time, as well as the noise made by the passing freight train, and the further fact that a strong wind was blowing from the south at the time, it can not be declared as a matter of law that McClain was guilty of contributory negligence; but these facts, in connection with all the other facts and circumstances of the case, were properly submitted to the jury, and it was for it to decide whether he observed the care for his own safety that a reasonably prudent man would have exercised under the same conditions.

The judgment of the district court will be affirmed.