No. 24,297.

BERTHA BOLLINGER, *Appellee,* v. CHARLES E. SCHAFF, as Receiver of THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

NEGLIGENCE—*Railroad Crossing—Contributory Negligence—Question for Jury.* In an action for damages for personal injuries received at a railroad crossing on one of the main streets of a city, the evidence examined, and *held,* that the question of the contributory negligence of the plaintiff was properly left to the jury.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed March 10. 1923. Affirmed.

*W. W. Brown,* and *O. T. Atherton,* both of Parsons, for the appellant.
*B. Hudson,* and *Douglas Hudson,* both of Fort Scott, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for personal injuries alleged to have been sustained by plaintiff because of the negligence of defendant at a railroad crossing on one of the principal streets of Fort Scott. There was a trial to a jury, special findings, and a verdict for plaintiff. The defendant appeals, alleging numerous errors, most of which are embodied in the contention that the plaintiff was guilty of contributory negligence as a matter of law.

National avenue, the principal north and south street of Fort Scott, a city of the first class, is crossed almost at right angles by the

east and west lines of the defendant's railroad. There is much travel over the railroad crossing on this street for it is the only crossing to get out of or into town from the north; several auto trails are routed over it, and an actual count one morning showed 56 vehicles pass the crossing in fifteen minutes. The railroad has five tracks at this crossing; the main track and four side tracks north of it, the distance between the tracks being 9½ feet. A city ordinance, passed in 1909, required the defendant to keep a flagman at this crossing from six o'clock in the morning to six o'clock in the evening, and the defendant had complied with this ordinance until some time in 1919 when, without permission from the city, it changed the flagman's hours so that he went on duty at nine o'clock in the morning and remained on duty until five o'clock in the evening; though there is some testimony that after this change the flagman was at the crossing occasionally before nine o'clock in the morning. It was the flagman's practice not to remain at the crossing all of the time during his hours of duty but would be about the depot, which was near, and where he performed the duties of a janitor, and he would go out to the crossing and perform his duties as a flagman when a train was passing.

The plaintiff lived in the country a few miles and drove a Ford touring car into town over this crossing practically every day, bringing milk, and bringing her daughter to school in the morning and coming for her in the evening and was thoroughly familiar with this crossing. She had frequently seen the flagman there when there was a train and had passed the crossing at various times in the day when the flagman was not there and there was no train.

On the day in question, the plaintiff was driving into town from the north, bringing her daughter to school. Shortly before reaching the crossing she overtook two little girls going to school and had them get in the car, the four riding in the front seat. She approached the crossing at seven miles per hour. On the north side track there was a freight train which had been cut in two so as to let vehicles pass along the street, the row of box cars extending up to the side of the street, or near it, on each side. On the next side track, the one nearest to the main track, was a box car about 70 feet east from the street. There is some conflict in the testimony as to which track the freight train was on that was cut in two, some witnesses saying it was on the track next to the main track, but we do not regard that as material now. The defendant's fast passenger train, scheduled

at 43 miles per hour between stations, due at Fort Scott at 6:28, was coming in late, at 8:15, on the main track, from the east. Just before reaching the main track plaintiff saw the train, applied the brakes on her Ford and turned it to the west, (with the train) and struck the side of the engine back of the pilot. The Ford was partially wrecked and plaintiff injured.

The jury returned a general verdict for plaintiff for $1,000 and answered the following special questions:

"1. If you find for the plaintiff state on what ground or grounds of negligence you base your verdict? A. No flagman on duty. Train going too fast and obstruction of view by box cars.

"2. Did plaintiff stop her automobile to look for trains before she attempted to cross defendant's railroad tracks? A. No.

"3. At what rate of speed was the automobile traveling when eight feet north of defendants main line track? A. Seven miles per hour.

"4. How far in feet and inches was the north rail of defendants main line track from the south rail of defendants passing track along the east side of the National Avenue crossing? A. Nine feet and a few inches.

"5. How far east of the point of collision was the first box car on the passing track? A. Seventy-three feet.

"6. If you find that plaintiff's automobile struck the side of defendant's engine, then state how far back of the point of the engine pilot the automobile struck the engine. A. In our opinion six or eight feet from the pilot.

"7. At what rate of speed was train number 5 traveling at time of the collision? A. Twenty miles per hour.

"8. How far was the automobile from defendant's main line track when plaintiff first looked and saw the passenger train? A. Eight feet."

Appellant invokes the rule, repeatedly followed in this court, and stated in *Railroad Co. v. Holland*, 60 Kan. 209, 56 Pac. 6, as follows:

"A person who sees a railroad track upon which trains may pass at any time is already warned of danger, and it is the imperative duty of one about to cross the tracks of a railroad, at least, to look and listen for approaching trains. If he fails to look, when by looking he could see a coming train, and there *is no excuse for such failure* (italics ours), he will be deemed guilty of negligence *per se,* and not entitled to recover for injuries sustained in a collision with a train." (Syl. ¶ 1.)

It will be noted that in this case there is no question about the negligence of defendant. It had voluntarily violated a reasonable and valid ordinance of the city by not having a flagman at this crossing at the hour of the injury. Considering the partial obstruction of view by the box cars; the absence of the flagman in violation of the ordinance; the heavy traffic on this street; the train coming in late at 20 miles an hour, leaves no room for doubt upon this ques-

tion. It is possible, in view of the situation of this crossing and the amount of traffic there, the defendant would be negligent in not having a flagman, even if there were no ordinance (*Grand Trunk Railway Co. v. Ives,* 144 U. S. 408), but that need not be decided. Neither would the absence of the flagman, even though one is required, make the defendant guilty of actionable negligence unless such absence was one of the proximate causes of the injury. (*St. Louis & S. F. R. Co. v. Rutland,* 207 Fed. 287.) Notwithstanding the negligence of defendant, the plaintiff cannot recover if her injury was, as a matter of law, the result of her own negligence. The plaintiff should not be held guilty of negligence which would preclude her recovery as a matter of law, if reasonable minds, giving fair consideration to all the evidence on the question, might reach different conclusions on the subject.

The plaintiff testified:

"Q. Before you drove upon the M. K. & T. crossing at that time, what did you do with reference to looking for anything? A. I always look out to see if I could see cars either way and the flagman, I always depend on him and didn't see him.

"Q. You say you depend on the flagman? A. Yes, sir.

"Q. Did you depend on him that morning? A. Yes, sir, I did.

"Q. Did you see him? A. No, sir."

It was shown by the evidence that had plaintiff looked to the east, at a point 28 feet from the main track, she could have seen the oncoming train 73 feet away. These measurements were taken sometime after the injury by placing a car on the track where defendant's employees said the car was setting at the time, and, while there is some chance of them not being absolutely accurate, they are fairly so. Plaintiff testified that she saw the oncoming train when it was 50 or 60 feet from her and at that time she was within about eight feet of the main track. A train traveling at 20 miles an hour will travel nearly 30 feet per second, so if plaintiff could have seen this train 73 feet away, she had only about three seconds in which to act.

The courts have in quite a few cases passed on the question of what effect, if any, the absence of a flagman at a crossing where he was known by plaintiff to be required to be would have upon the contributory negligence of the plaintiff. Some cases hold that a traveler who is familiar with the practice of a railroad company of having a flagman at a crossing when the trains are approaching is entitled to regard the absence of the flagman as an indication that it is safe for him to cross the track. (*Dolph v. New York, N. H. &*

*H. R. Co.,* 74 Conn. 538; *Chicago & A. R. R. Co. v. Wright,* 120 Ill. App. 218.) Other cases hold that while the traveler is not entitled to rely solely upon the absence of the customary flagman as an indication of safety such absence will have some effect in relieving him from contributory negligence. (*Railway Company v. Amos,* 54 Ark. 159; *Roberts v. Railroad,* 69 N. H. 354; *Berry v. Pennsylvania Railroad Co.,* 48 N. J. L. 141; *Southern R. Co. v. Aldridge,* 101 Va. 142.) In *Montgomery v. Railroad,* 181 Mo. 477, the absence of a flagman customarily at a crossing is spoken of as a potent factor in considering the conduct of a traveler in proceeding over the crossing. In *Edwards v. Chicago & Alton Ry. Co.,* 94 Mo. App. 36, the court said the rule requiring a person about to cross a railroad to look and listen is modified when the crossing is one usually guarded by a flagman so as to allow a passenger to rely to some extent upon being warned if there is danger. Quite a few cases hold that whether a traveler is justified in relying upon the absence of a flagman as an indication of safety, and the extent to which he is so entitled to rely, is a question of fact for the jury. (*P., C., C. & St. L. R. R. Co. v. Smith,* 110 Ill. App. 154; *Richmond v. Railway Co.,* 87 Mich. 374; *Woehrle v. Minnesota Transfer Ry. Co.,* 82 Minn. 165; *C., St. L. & P. R. R. Co. v. Hutchinson,* 120 Ill. 587.)

Taking all the circumstances of the case into consideration, including the fact that plaintiff had some reason to think a train was not coming when she did not see the flagman there, and her duties in relation to the situation, we cannot say as a matter of law that the plaintiff was guilty of contributory negligence which precludes her recovery. The question was properly left to the jury. (*McClain v. Railway Co.,* 89 Kan. 24, 130 Pac. 646; *Williams v. Railroad Co.,* 89 Kan. 35, 53 Pac. 834; *Weston v. Hines,* 107 Kan. 625, 193 Pac. 340.)

Appellant complains of several matters relating to the instructions of the court. The instructions are open to the objection that they are rather involved, contain some repetition, in some places definite principles are qualified in a way to make them obscure, and a few isolated sentences standing alone misstate the law, but on the whole they are not sufficiently objectionable to require a reversal.

Appellant complains that the verdict is excessive; that plaintiff's injuries were not sufficient to justify so large an award. We have examined that question and are satisfied that the injuries sustained were sufficient to justify the amount of the verdict.

Finding no reversible error the judgment is affirmed.