FANNIE BLACKWELL v. UNION PACIFIC RAILROAD COMPANY, and F. S. WALBRIDGE, Appellants.—52 S. W. (2d) 814.

Division One, September 3, 1932.

*Watson, Gage, Ess, Groner & Barnett* and *T. M. Lillard* for appellants.

36

*Jenkins & Vance* and *Mosman, Rogers & Buzard* for respondent.

FRANK, J.—Action by plaintiff, respondent here, to recover damages for personal injuries alleged to have been caused by a Union Pacific Railroad train striking an automobile in which plaintiff and others were riding. Plaintiff recovered judgment in the sum of $15,000 and defendant appealed.

We will refer to the parties as plaintiff and defendants.

Defendants' first contention is that the trial court erred in refusing to give their requested instruction in the nature of a demurrer to the evidence.

The events giving rise to this lawsuit occurred at a public railroad crossing in North Lawrence, Kansas. At the place in question six railroad tracks cross a public road known as Victory Highway. The highway runs north and south and is thirty-seven feet wide. The railroad tracks run east and west and cross the highway at practically right angles. These tracks are thirteen feet apart from center to center thus making the length of the crossing from north to south over the six tracks approximately seventy-five feet. The automobile in question was a Ford roadster with only one seat. Plaintiff sat to the right of her brother, Harvey Blackwell, the owner and driver of the car. To the right of plaintiff sat one Mike Seymour who held plaintiff's sister, Helen Blackwell, on his lap. These people were driving north on Victory Highway at about 11:30 o'clock P. M. on a dark, foggy night. As they approached the crossing the automobile was brought to a complete stop about five to eight feet south of the south track, and the occupants of the car looked and listened for a train, and for signals or warnings that might indicate the approach of an oncoming train. Neither seeing nor hearing a train, and not seeing any signals nor hearing any alarm or warning indicating the presence of a train, the driver of the automobile shifted into low gear and proceeded northward, he and the plaintiff looking and listening both east and west for the approach of a train. They crossed the first five tracks in safety and when they reached the sixth track the automobile was struck by a box car attached to the end of a Union Pacific railroad train which was backed westward over the crossing. There were box cars standing on the three south tracks within four feet of the west line of the highway. These box cars obstructed the view to the west until the automobile reached the third track.

Defendants have attached to their brief a blue print showing the highway running north and south, the six tracks crossing the highway east and west, the box cars standing on the three south tracks, the position of the automobile at various points as it proceeded northward, and the points on which the lights of the automobile shone as it proceeded over the crossing. This blue print shows that when the automobile reached the third track from the south, upon which the last string of cars was standing, the lights from the automobile shone upon the north or sixth track at a point four feet west of the west line of the highway. At that time the automobile was thirty-nine feet from the point of collision. On account of the darkness

plaintiff could not see beyond the point reached by the lights of the automobile.

Defendants assume that the train and the automobile were both traveling six miles per hour, and from the facts shown on their blue print argue that when the automobile reached the third track which was thirty-nine feet from the point of collision, the train was within the rays of light from the automobile, and plaintiff could have seen it at that time and warned the driver of its approach in time to avert the accident. The trouble with this contention is the assumption that the train and the automobile were both traveling six miles per hour. While there was evidence to that effect, there was also evidence that the train was traveling twelve miles per hour and did not decrease its speed until after the collision. Plaintiff is entitled to have the evidence viewed in a light most favorable to her, and so viewing the evidence, it presents a different picture. As heretofore stated, when the automobile was thirty-nine feet from the point of collision, its lights shone on track six at a point four feet west of the west line of the highway, which point was thirty-one feet from the point of collision. If the train was traveling twice as fast as the automobile, it was seventy-eight feet from the point of collision when the automobile was thirty-nine feet from that point. This being true, the train would have to travel forty-seven feet before it came within the rays of light from the automobile where it could be seen. While the train was travelling this forty-seven feet, the automobile would travel one-half of that distance or twenty-three feet which would bring it within sixteen feet of the point of collision at the time the train became visible. The automobile, going at six miles per hour, would travel this last sixteen feet in less than two seconds.

All of the occupants of the car, including plaintiff, were familiar with this crossing, and had gone over it many times before the night in question. Plaintiff and her brother both testified that when they went over this crossing on other occasions, a large arc light was burning above the crossing, an automatic bell at the northeast corner of the crossing would ring when trains were near the crossing, and a watchman on the crossing would signal travelers to stop when trains were approaching, and that it was the custom to have a watchman stationed at the crossing for that purpose. They further testified that on the night in question there was no watchman at the crossing, the arc light was not burning, the automatic bell was not ringing; that neither the whistle nor bell on the engine was sounded, and there were no lights on the car which backed over the crossing and struck the automobile. The lack of these things are counted on in the petition as acts of negligence. While defendants' evidence flatly contradicted that given by plaintiff and her witnesses on the

question of lack of lights, warning signals and a watchman, but we are not concerned with the conflict in the evidence.

There is no question but what defendants were guilty of negligence in backing the train over a public and much-used crossing under the conditions which plaintiff's evidence tends to show existed there at that time. Indeed defendants do not contend otherwise. Their contention is that plaintiff was guilty of contributory negligence as a matter of law in failing to discover the approach of the train and warn the driver of the automobile thereof, in time for him to stop the automobile and thus avert the collision. We do not agree with this contention. We have heretofore pointed out that after the train became visible, less than two seconds of time elapsed before the collision occurred. Remembering that it was plaintiff's duty to keep a lookout ahead and to the east as well as to the west, we cannot say, as a matter of law, that plaintiff was guilty of negligence in failing to discover the train and warn the driver of the automobile in less than two seconds of time. Neither do we think that plaintiff was guilty of negligence in not taking further precautions than she did take. She and her brother were both familiar with the crossing and knew it was the custom for the automatic bell to ring and the watchman to signal travelers when trains were approaching the crossing. They looked for and expected to see a watchman and looked and listened for a train or a signal or alarm indicating that one was approaching. While the absence of warning signals by bell or whistle or by a watchman at the crossing would not justify plaintiff in closing her eyes and ears, and giving no heed for her own safety, it is a circumstance to be considered by the jury along with other facts and circumstances in the case in determining whether or not plaintiff acted as an ordinarily prudent person would have acted under like circumstances. Numerous Kansas decisions so hold.

In Bollinger v. Schaff, 113 Kan. 124, 213 Pac. 644, that court said:

"Taking all the circumstances of the case into consideration, including the fact that plaintiff had some reason to think a train was not coming when she did not see the flagman there, and her duties in relation to the situation, we cannot say as a matter of law that the plaintiff was guilty of contributory negligence which precludes her recovery."

In McClain v. Railway Co., 89 Kan. 24, 130 Pac. 646, it is said:

"Ordinarily, if a traveler proceeds across a railroad track without taking the precaution to ascertain if there is a train in dangerous proximity, he does so at his peril. The application of this rule is modified to some extent by the circumstance that gates have been erected and watchmen employed at crossings. In such case a traveler

is not required to exercise the same vigilance when he approaches a track as he would at crossings not so guarded. The railroad track itself is a warning of danger which a traveler cannot safely ignore, but when it is the custom of a railroad company to provide gates or flagmen, and thus give other warnings of danger that a train is about to pass, the absence of such warnings may lead a traveler to believe that he can safely proceed, or that there will be time to cross before a train will pass. The fact that gates have been erected and are open when a traveler approaches a crossing will not justify him, of course, in closing his eyes and ears when passing over railroad tracks, but it is a circumstance to be weighed by the jury in determining whether at the time he was using the care that a reasonable and prudent man would and should exercise.'' Page 30 of 89 Kan., 130 Pac. 646, 648, Ann. Cas. 1914C, 699.

Other Kansas cases are to the same effect: Weston v. Hines, 107 Kan. 625, 193 Pac. 340; Polfer v. Chicago Great Western Railroad Co., 130 Kan. 314, 286 Pac. 240; Torgeson v. Missouri-Kansas-Texas Railroad Co., 124 Kan. 798, 262 Pac. 564; Sing v. St. Louis-San Francisco Railroad Co., 30 S. W. (2d) 37; Peterson v. Railway Co., 115 Kan. 751, 225 Pac. 116.

For the reasons stated we hold that plaintiff made a case for the jury.

It is next contended that the court erred in giving Instruction P-1 at the request of plaintiff in that it conflicts with instructions D-1 and D-6 given at the request of defendants.

Instruction P-1 directs a verdict for plaintiff upon a finding by the jury (1) that plaintiff was in the exercise of that degree of care for her own safety which an ordinarily prudent person would exercise under like circumstances, (2) that defendants negligently failed to sound any signal of warning of the approach of the train, and (3) that such negligent failure to sound an alarm was the sole and direct cause of plaintiff's injuries.

Instruction D-1, in substance, directed a verdict for defendant upon a finding by the jury that a brakeman stationed at the crossing adequately warned plaintiff of the approach of the train by signals with a lighted lantern, even though no warning signals were sounded.

A similar instruction was given as to a signal by the automatic bell.

Instruction D-6, in substance, directed a verdict for defendant upon a finding by the jury that the crossing was sufficiently lighted so that plaintiff by the exercise of ordinary care could have seen the train approaching and warned the driver in time for him to thereafter stop the automobile and avoid the collision, regardless of any other fact or circumstance in the case.

**42**

■ ■ It was defendants' duty to warn plaintiff of the train's approach to the crossing, but they were not required to give such warning by any particular method. In other words, a failure to warn by a particular method would not be negligence if an adequate warning was given by some other method. Plaintiff concedes that she would not be entitled to recover on the ground that defendants failed to sound a signal of warning if a sufficient warning was given by the ringing of the automatic bell, or by a brakeman giving signals with a lighted lantern, or if the lights at the crossing had been burning so that the approach of the train could have been discovered in time to avert the collision. This being true, plaintiff's Instruction P-1 which directs a verdict for plaintiff on the sole ground that defendants negligently failed to sound any signal of warning is fatally erroneous in that it does not require a finding that defendants did not give a warning by any of the other methods mentioned. In other words, the instruction does not require the jury to find the facts necessary to constitute a failure to warn.

Plaintiff contends that this instruction does not conflict with those given for defendant and when they are read together, they fairly submit the issue of warning or no warning.

■ ■ The rules determining when instructions may, and when they may not be read together are well settled. In Oldham v. Standard Oil Co., 15 S. W. (2d) 899, 900, one rule is thus stated: "If the plaintiff's instruction announces the true rule, but in such language that it may be misconstrued, then it is proper to read all the instructions together to determine whether or not the jury was clearly and properly instructed." In the case of Heigold v. United Rys. Co., 308 Mo. 142, 271 S. W. 773, 777, another rule is stated as follows: "Where plaintiff's instruction omits some feature which is not an element of his cause of action, but is merely a defensive feature, the omission may be cured by the instructions for defendant submitting that feature." The rule applicable to the instant case is tersely stated by this court en banc in State ex rel. Long v. Ellison, 272 Mo. 571, 583, 199 S. W. 984, as follows:

"Where an instruction for the plaintiff undertakes to cover the whole case, and where such instruction contains a direction to find for the plaintiff, provided the jury find the hypothetical facts mentioned in the instruction in plaintiff's favor, and where such instruction omits a hypothetical fact which must be found in favor of plaintiff before there can be a recovery, then the omission of the last named hypothetical fact cannot be cured by any instruction given for the defendant. In such case, instead of the defendant's instruction curing the omission, it produces a conflict in the instructions."

The gist of plaintiff's case is that defendants did not give her any warning of the approach of the train. Instruction P-1 which directed a verdict for her should have required a finding that no warning was given. The direction to find that no signal of warning was sounded does not amount to a direction to find that no warning of any kind was given, when according to the evidence, a warning could and might have been given by some method other than the sounding of an alarm signal. It is, therefore, clear that the instruction omits a necessary element requisite to the right of plaintiff to recover, to-wit: a requirement that the jury find no warning was given. Such omission cannot be cured by an instruction given for defendant. [State ex rel. Long v. Ellison, supra.] Instruction P-1 which directed a verdict for plaintiff upon a finding that defendants negligently failed to sound a signal of warning, is in hopeless conflict with Instruction D-1 which directed a verdict for defendants upon a finding that they warned plaintiff by giving signals with a lighted lantern, although they failed to sound a signal of warning.

Defendants' final contention is that the court denied full faith and credit to the law of Kansas as declared in the decisions of the Supreme Court of that State.

This contention is based on the theory that the evidence favorable to plaintiff disclosed that the occupants of the automobile could have seen the train when the automobile was thirty-five feet from the point of collision, and that the automobile could have been stopped within six or seven feet. The contention is that under the decisions of the Supreme Court of Kansas plaintiff was guilty of contributory negligence as a matter of law in negligently failing to warn the driver of the approach of the train in time for him to stop the automobile before it ran the thirty-five feet to the point of collision.

As we read the record, the facts favorable to plaintiff are as we have heretofore stated them, and not as defendants state them as a basis for this contention. The Kansas cases cited in support of our ruling on the demurrer to the evidence announce the Kansas rule applicable to the facts of this case. We have examined the Kansas case upon which defendants rely. They are not in conflict with the Kansas case which we have cited, but they are not in point in this case because their facts are unlike the facts in this case.

Because of errors noted in the giving of instructions, the judgment is reversed and cause remanded. All concur.